May it please the court, my name is Ryan Ray and I represent the defendant and appellant Francis Acebo, Jr., and it's my intention, with the court's permission, to reserve two minutes of my time for rebuttal at the conclusion. This court should reverse Mr. Acebo's convictions and sentences for murder and related charges, remanding for a new trial or other proceedings for all the reasons set forth in our briefing. But the two most significant issues and errors that we would submit require a new trial relate to the exclusion of other acts of the decedent, most principally those were threatening statements either made to Mr. Acebo or of which he was aware. And the second issue relates to the prohibition on cross-examination of the coroner about the decedent's testing positive for methamphetamine, extent of that, and the likely effects of such intoxication. I mean, was there a foundation on the coroner that the coroner was a witness that could testify to the things you just brought up, the possible effects, the level of methamphetamine in the system, that type of thing? Well, Your Honor, I would submit the coroner was testifying as a disclosed expert witness on the subject matter of the report that she rendered. Well, her report was that it was there and regarding the cause of death. It wasn't what the defendant might have acted like if he was on meth. But, Your Honor, it did adopt other parts of statements made by another appropriate medical professional, as experts can, of course. Extent and likely effect. And so, putting her on to test... I mean, what did the coroner's report, I mean, other than saying I adopt expert so-and-sos' opinions on this, what did the coroner's report say about likely effects? I believe it talked about level and extent of intoxication and that as those levels increased, that the aberrational effects on behavior, of course, of which there was other evidence here in this case... I mean, wouldn't it be harmless in that event because it would be cumulative? Well, I don't believe so, Your Honor, and here's why. Because this is a medical professional testifying to medical data and medical results that lay witnesses could not properly interpret and explain. Certainly, there were other witnesses, including Mr. Acebo himself, who were testifying to this individual's behavior, the decedent's behavior on the night in question. He was violent. He was erratic.  And, Your Honor, what was improperly excluded is that medical information from someone qualified to speak to that who had been put on as a disclosed expert witness. It's the exclusion of that information that didn't come from any other source or any other person. That is the erroneous exclusion that occurred as it relates to that issue. The coroner didn't test it. Did you designate... Are you appellate counsel only? You didn't try the case? I did not try the case, Your Honor. I'm appellate counsel. Did trial counsel cross-designate that expert? Do you know that? I don't believe... There's nothing I've seen in the record that would indicate that. I'm just curious because what it seems like to me is that on cross-examination, you or your trial counsel wasn't trying to examine the coroner about something the coroner had said. It was about something else in the coroner's report that maybe they wanted in evidence themselves, but they didn't plan on putting it in on their case-in-chief. And, you know, brought it up as, oh, this is just, you know, I'm just cross-examining here, not the idea that they were trying to get this in as substantive evidence. I would say, Your Honor, the coroner, I would submit, adopted those statements by including them within the report, and to test... And the report was disclosed in accordance with the rules as the basis of what her testimony would be. Was it admitted into the record in its entirety, into evidence? I don't believe it was, Your Honor, and I'm not sure that even necessarily would be appropriate, but I still... I mean, that's sort of the point. I mean, I could see your point if the government had moved for its admission and it had gone in, and then you have that substantive evidence there that maybe you can ask questions about. But I would submit, Your Honor, it's part and parcel of what the coroner adopted and was disclosed. And so testifying to those conclusions, I would submit that anything that informs those conclusions is fair subject of cross-examination. And the coroner thought it sufficient enough to the... or informative enough to the conclusions she reached to include the information in the report. And so by positing her to testify to those conclusions, I would just submit that anything that informed them was in the report and that she had chosen to adopt it should have been fair for cross-examination. Now, in addition, there's another category of issues... Did you make an offer or explain to the court when you weren't trial counsel? That's why this question is hard. I don't recall that there was an offer approved by the defense counsel on the basis of what you've just told Judge Carson. Was there an offer after the court denied the visibility of the evidence that the trial counsel was trying to get in? So I would submit, Your Honor, that when there was an objection made, there was a discussion. There was a sidebar conference, I believe, with the court in which defense counsel did describe, we would submit in sufficient detail, the nature and extent of the evidence that he wished to admit in that. And we would just submit that that was adequate enough to disclose the nature and extent of the questioning that was sought. And it was sufficient under Rule 103 to preserve the error. You've answered my question. I apologize for taking up your time in regards to that. I just don't remember, but we'll look at the record. I believe, Your Honor, if I recall correctly, it may be somewhere around pages 300, 301, 302 from the trial transcript. It's in our briefing, though. I'm certain of that. Thank you. Appreciate it. Certainly. Now, Mr. Acebo was also prohibited during his testimony, and he was also prohibited from cross-examining another witness about prior threats of death or bodily harm that the decedent had made, either to him or which he was personally aware, on a number of grounds that we would submit are error. I think the first and perhaps the most significant was that he had not given pretrial notice of his intention to introduce that evidence. And Rule 404b specifically says the prosecution is required to give notice of these things. The accused, however, is not. But the district court scheduling order did require the defendant to provide pretrial notice of 404b evidence, correct? Well, the scheduling order, Your Honor, said any party that intends to introduce things subject to 404b. And I would submit, and trial counsel did submit at the time, that this kind of evidence, particularly in the testimony of the accused himself, is not subject to 404b at all. Because it's a risk justice? I believe so. Or it also is informative of his state of mind on the night in question. I think that's important to keep in mind here, which is that when self-defense is raised, it was here, and the court found the instruction was to be given and was given based on the trial evidence. And it becomes the government's burden of proof to prove beyond a reasonable doubt that the defendant wasn't acting in self-defense, and which necessarily includes an examination of the reasonableness. And I agree it's the objective reasonableness of his conduct under all the circumstances. I don't want to interrupt your train of thought. But if we conclude that the district court was within its discretion in interpreting the offered evidence as either, as 404b evidence, rather than evidence offered for res gestae or for some reason other than 404b, would we be compelled to conclude that the district court was within its discretion in enforcing its scheduling order to disallow you to use evidence that, in the court's view, was 404b evidence? Notwithstanding what the Federalism of Evidence, 404b, says. I would say no, Your Honor, for several reasons. First of all, there's nothing to indicate that that was the actual basis of the court's ruling, that this was required under the scheduling order and wasn't provided. And there's also nothing in the scheduling order itself that would objectively indicate that the court was altering the requirements of the rules. And to the extent that it was, we would submit that in itself as error. Because the case law from the U.S. Supreme Court is very clear that imposing a local rule, or I think the equivalent of a local rule, which this would be, the court can't vary the plain language of the rules themselves. But you can impose obligations that are supplemental to the obligations in the Federal rules, but you just can't impose rules that contradict the Federal rules. Is that true? I do believe in general that's true. I think that's not particularly here, especially when it relates to the testimony of the accused. The rules obviously treat that very differently for good reason. And the idea that the accused has a duty to make a pretrial disclosure of his own testimony, I would just submit that's totally in conflict with the right to testify. Well, it's not necessarily the accused. You have to give, under the scheduling order, you would have to give the subject matter that you wish, notice of the subject matter that you wish to bring up, if it was 404B related. And because the idea is that we're not going to use this type of information sort of as a surprise to the other party. Right? So it's more like a trial management, and it wouldn't necessarily have to be the accused who brought that testimony forward. Well, I would say, Your Honor, if it is indeed… You could have his cousin testify that a few weeks before, there had been a drive-by shooting at the grandmother's house by the defendant. I suppose in theory, could that occur? Perhaps so. But again, here, Your Honor, we're talking about the principal place in which this played itself out was in the accused's own testimony. I don't dispute that at all. And the second place was in the testimony of the decedent's girlfriend. And that was a prior inconsistent statement. The inconsistency didn't arise until the trial itself. And when it's really there, when she says there's no conflict, I'm not aware of any conflict, she then makes her prior statement relevant. It's frankly similar to the gloss up case the Supreme Court just recently decided. I mean, it's relevant for impeachment, right? It is. It's not substantively relevant, because it would only be substantively relevant if your client knew about it. Well, and a limiting instruction could have been given. But what happened here was a complete and total lie. No, I understand that. You agree with that, though. It's not substantively relevant. It would only be relevant for impeachment. As it relates to Ms. Brown, I believe that's true. But as it relates to Mr. Acebo himself, it's not true. He could testify to substantive evidence of anything of which he was aware. He'd have to be aware of it, but it could inform his state of mind. And it would be offered for the non-hearsay purpose of his state of mind on the night in question, which can be informed by prior events involving this same person. I would request to reserve the remainder of my time if that pleases the Court. Certainly. Unless there are other questions. Kevin, why don't you stop this clock? Judge Baldock, do you have any questions? No. No, you don't. Okay, thank you. Thank you.  Ms. Jackson, before you get started, this is your time, so I don't want you to have to spend time on things you don't want to talk about. Yes. But I will tell you that it would be helpful, at least to me, on the issue involving the exclusion of Mia Brown's statement to law enforcement. If in your 15 minutes you have time to fit in a discussion about that. I will do so. It's totally up to you. Thank you, Your Honor. May it please the Court, my name is Carrie Jacobson, and I represent the United States. We ask the Court to affirm Francis Acebo's conviction as the three issues raised on appeal were either not error at all or were harmless. Specifically, beginning with what the Court has just addressed, the Court's ruling that the victim's statements to witness Mia Brown were improper impeachment was not an abuse of discretion, not whimsical, arbitrary, capricious, or manifestly unreasonable under the facts of this case. The Court's factual determination that the testimony was not inconsistent with her prior statements to law enforcement was not clearly erroneous. It was factually supported by the record and does not lead to a definite and firm conviction that any mistake has been made. For this reason, the defense inferred there must have been conflict for the victim to have made such statements to his girlfriend. But any inference was not the question. Witness Mia Brown truthfully answered the question put to her. The victim had told his girlfriend, Mia Brown, he had to put down my brother or his kids weeks before the murder. When Mia Brown was asked by defense counsel if she had ever observed any conflict between Red Star and Mr. Acebo, she testified, not that I know of, no. So you don't think it was inconsistent to say, have you ever observed any conflict between Judge Carson and Judge Bacharach? And the answer is no. And then the impeachment question is, well, did Judge Carson a couple of weeks ago say he wanted to take Judge Bacharach out? And that's not inconsistent with you've never observed any conflict between Judge Carson and Judge Bacharach? Well, you are asking for an inference there. So the inference would be, if a person were to— Typically, when you say you want to kill somebody, that's a conflict. There's been some conflict. But what the court explored at the sidebar then, Mia Brown was not aware of what that conflict was. There was never a part of the evidence that said why the victim had made this statement, the context of it, what his— That's a different question. That she wasn't aware of anything in their relationship that might have caused either one of them to be fearful of the other. So presumably she might have answered that truthfully because he didn't know that Acebo had told Red Star that he wanted to kill him. It was the preceding question that I'm troubled by. Have you ever observed any conflict between Red Star and Acebo? And Mia Brown's testimony had been they had been hanging out. She had been hanging out with them on a couple of other occasions. She considered them to be bros, which was established at the vehicle where the defendant claimed that Red Star threatened him. So they cleared things up. But how does that negate her observation that there was a conflict previous? Maybe they resolved it. Maybe there's no reason for him to be scared. But all he was wanting to impeach with was when you say you never observed any conflict, a couple of weeks ago you did hear him say that he wanted to kill him. But that is different than the question put to her, I would submit. Have you ever observed any conflict? The statement the victim made to her was by themselves, alone in their bedroom. He makes the statement, I've got to put him down or his kids. And she tells him no, you're not going to do that. And in her mind that's the end of it. Now has she observed a conflict? I would submit to you she has not. And I believe the district court then explored every conflict that I knew of from the investigation for the judge to consider. Does this witness know of any conflict between these two people? And ultimately the court concluded that she did not. So your position would be for her to have answered that there had been a conflict, she would have had to witness them together and seen a conflict between them. Or heard it, perhaps. Heard it or even heard of it because let's just say hypothetically the victim had said to her, this guy's made me so mad, I've got to put him down or his kids down. He, I don't know, killed my dog last week or whatever. Then I think she'd have to say, yeah, well, I've observed conflict or I'm aware of conflict. I would say if she was aware of conflict, then I wouldn't be standing here making this same argument. But the victim provided no background to that statement. Judge Baldock has a question. I have a question, please. Your word that you're saying is key to this whole thing is the use of the word observed. Well. That's the key to your argument. I would go further than that. The use of. Oh, go ahead, please. I would go further than that, Your Honor. And I would say that based on the record, the judge explored with some depth that Mia Brown was not aware of any conflict. Now, the question put to her, as you've pointed out correctly, had she ever observed any conflict, clearly would say that, you know, have you ever seen it with your own eyes or ears? But what the judge explored, and I believe may have weighed differently on his question that this was improper impeachment, was whether she was even aware of any prior conflict. No argument that she's aware of the statement that the victim made to her. I've got to put the defendant or his kids down. But as to what the basis of that was, what any conflict between them was, not only had she never observed any, but based on the record, we showed the judge that she was not even aware of any conflict between the two of them prior to her testimony. So my short answer is I don't think that I'm hanging my hat on the word observed. What do you think about the textual? Let's move on to the other statements that he wanted to testify himself as the defendant. What do you think about the textual argument that the notice requirement applies only to the government? Do you agree with that? I do agree with that. That is accurate. And so what is your defense of the district court's decision on those? My defense is that the defense never proffered sufficiently to the court at any time what the defendant wanted to testify to, not by way of previewing his self-defense claim, but by way of testifying to any specific bad acts or specific threats by the victim. The only proffer the defense ever made as to what the defendant wanted to testify to was that on such and such a day, he threatened to kill me. There was no context given, no time frame in relation to the murder, no basis of the defendant's knowledge. Nothing further was ever proffered by the defense. So when the judge is trying to make a determination, can the defendant testify to this? Can this come in under the reverse 404B test that we see in our MAHO? The first, of course, prong is the court has to determine, is the defendant aware of this? And was the defendant aware of these threats or specific bad acts at the time of the commission of the offense? And the answer is, we don't know. And the court doesn't know, because it was never proffered to the defense. Do you remember where in the record that colloquy was? I do, Your Honor. The sidebar from, now the colloquy, now if you're referring to the colloquy concerning the proffer of evidence of drive-by shooting at grandma's house five weeks ahead of time, the victim threatening to beat the defendant's ass because he caught him molesting his children, and the time that the defendant shot the firearm in the victim's home two weeks before the murder and got into a conflict with another man, not the defendant. That colloquy was on February 14th, and that was only as to the court's exploration of whether or not the question put to Mia Brown was proper impeachment. And that is on volume three, page 470. That's where the government is proffering those three pieces of evidence that I'm aware of that the victim has done in the past, allegedly, I don't know, but were the only bad acts or threats by the victim towards the defendant that the government was aware of. Those were provided to the court as it's trying to work through, is Mia Brown aware of any conflict between these two men? The next time when we're talking about what the defendant's going to testify to, that sidebar is on the next day. And at that sidebar, the only proffer of evidence is that my client wants to testify that on such and such day, the victim threatened to kill him. That's it. There was no additional proffer to the court. And so when the court's trying to make this determination as to relevance, does he have a basis of knowledge? Did the defendant have a basis of knowledge of any specific prior bad act or prior threat by the victim? The answer is the court doesn't know. It's not been provided to him. And then when the court goes further, trying to determine any 401 if it's relevant or a 403 balance, the court did what it could with the evidence before it, ultimately determining that the defendant would be allowed to testify to a generalized fear of this victim. Excuse me. You're trying to interrupt now.  But that even though the defense never did really proffer that it was going to admit any kind of character or trait evidence under Rule 405, but the court permitted the defendant to testify to this generalized fear because that's all it had in front of it at the time. So our position, of course, is that this was not an abuse of discretion. The court did apply the reverse 404B test appropriately, but that the defense had just never sufficiently proffered the evidence to allow the court to make any different ruling. So would you disagree that the court relied on a lack of notice? Well, it seems like here you're saying even on the day he wanted to testify about it, he could come forward with nothing to say exactly what he was going to testify about, or he came forward with nothing to say what he was going to testify about. But what about the notice? Right. Well, I would suggest to the court that I cannot speak for the district court, but throughout the record you will notice the court saying, well, that will be proffered to the court in the future. Well, I expect to hear about that. And yes, the court did make the discovery ruling, you know, saying that 404B notice had to be noticed earlier before trial. But as you look at the colloquy at the sidebar, you can see the court would still entertain a proffer of evidence that the defendant wanted to testify to. And I myself kept using the word notice and notice, but really more artfully it would have been if I had said proffer, proffer. The court and myself were just searching for what is it that the defendant wants to testify to. So you're not relying on lack of pretrial notice? Secondarily, I would say the judge did, Your Honor. He first, you know, it was never sufficiently proffered. Secondarily, no 404B notice was provided. But in looking at the record, I believe the court was still inviting notice at the sidebar right before the defendant wanted to testify. And, of course, and then the defense has mischaracterized the record by listing the victim's prior bad acts as though the defense proffered them to the court at the sidebar before his client testified. And that includes the drive-by shooting, the threatening to beat his ass, and then the reckless shooting at his house two weeks prior to the murder. And, you know, the prior bad acts were never proffered by the defense, never adopted. He didn't ever try to adopt my proffer of those when I was trying to give the court some ground to rule on the impeachment issue for Mia Brown. The defense argued that any victim threats were inextricably intertwined. But ultimately, the court found that the threats in the hours leading up to the murder, to include two threats by the victim with two different firearms in two locations, the defendant got to testify. He was fearful after both of those threats that those are what was inextricably intertwined. And the defense testified expansively about all of the victim's bad acts and all of the victim's threats in the hours leading up to the actual murder itself. The court, again, also allowed the defendant to testify to his generalized fear of the victim in the past. And that was not an abuse of discretion because here it was allowed as a circumstantial use of character evidence. And so the court allowed the defendant really to testify in a manner that was similar to trait or character, even though the defense never moved to admit the evidence under Rule 405. And if there are no further questions, I would submit on the briefs. Thank you. Judge Baldock, do you have any questions? No. Thank you. I'll be very brief. I would just respectfully invite the court to pages 8 and 9 of our reply brief as it relates to Ms. Brown, as it relates to the inconsistency that she gave, and as it relates to exactly the substance of the inconsistency that counsel wished to pursue. And also, as to Mr. Acebo's testimony, I believe the record on that is from roughly page 740 to page 800 of the trial transcript. I think the record will very clearly bear out that notice was the basis. And the context, further offer of proof is not needed if the substance is clear from the context. This had been brief pretrial. There had been pretrial hearings on it. There had also been proceedings involving Ms. Brown's testimony the day before. It was clear from the context what the substance was, and the record bears out that it was excluded on erroneous grounds. If there's no other questions, we would ask for reversal for the reasons in our brief. Thank you. I appreciate the excellent advocacy from both sides. This matter is submitted. We'll take a ten-minute break.